## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GLENN EVANS, an individual,    )
    )
    )  No.  16-cv-7665
    )
            Plaintiff,    )
    )
          v.    )
    )
CITY OF CHICAGO, a municipal    )
corporation; MATRICE CAMPBELL, an    )
individual; VINCENT JONES, an    )
individual; SCOTT ANDO, an individual;    )
SHARON FAIRLEY, an individual;    )  **Jury Trial Demanded.**
ANDREA STOUTENBOROUGH, an    )
individual; JAMES LUKAS, an individual;    )
ANTHONY FINNELL, an individual;    )
MARIA OLVERA, an individual; SHERRY    )
DAUN, an individual; WILLIAM CARLOS    )
WEEDEN, an individual; LINDA    )
FRANKO, an individual; SHANNON    )
HAYES, an individual; WBEZ, a    )
corporation; and STEVEN "CHIP"    )
MITCHELL, an individual,    )

           Defendants.

## <u>COMPLAINT</u>

**NOW COMES** Plaintiff, Glenn Evans, by and through his attorney, Victor P.

Henderson, and complains of Defendants, the City of Chicago, a municipal

corporation, Matrice Campbell, an individual, Vincent Jones, an individual, Scott

Ando, an individual, Sharon Fairley, an individual, Andrea Stoutenborough, an

individual, James Lukas, an individual, Anthony Finnell, an individual, Maria

Olvera, an individual, Sherry Daun, an individual, William Carlos Weeden, an individual, WBEZ, a corporation, and Chip Mitchell, an individual, as follows:

## NATURE OF CASE

1.      This is an action for monetary damages brought pursuant to 42 U.S.C. §1983 and the laws of the State of Illinois.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1367, because Plaintiff asserts claims that arise under the Constitution and laws of the United States, and other claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §1391(b), because the facts that gave rise to the claims occurred within the Northern District of Illinois.

## THE PARTIES

4.      At all relevant times, Plaintiff Glenn Evans ("Evans") was a resident of the Northern District of Illinois and an employee of the City of Chicago as a Chicago Police Officer.

5.      At all relevant times, Defendant Matrice Campbell ("Campbell") worked for the Independent Police Review Authority ("IPRA") and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

6.     At all relevant times, Defendant Vincent Jones ("Jones") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

7.     At all relevant times, Defendant Scott Ando ("Ando") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as Chief Administrator of IPRA.

8.     At all relevant times, Defendant Sharon Fairley ("Fairley") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as Chief Administrator of IPRA.

9.     At all relevant times, Defendant Andrea Stoutenborough ("Stoutenborough") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as Coordinator of Investigations for IPRA.

10.     At all relevant times, Defendant James Lukas ("Lukas") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

11.     At all relevant times, Defendant Anthony Finnell ("Finnell") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

12.     At all relevant times, Defendant Maria Olvera ("Olvera") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA supervising investigator.

3

13.     At all relevant times, Defendant Sherry Daun ("Daun") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA supervising investigator.

14.     At all relevant times, Defendant William Carlos Weeden ("Weeden") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as Deputy Chief Administrator of IPRA.

15.     At all relevant times, Defendant Linda Franko ("Franko") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

16.     At all relevant times, Defendant Shannon Hayes ("Hayes") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

17.     At all relevant times, Defendant City of Chicago ("City") was a municipal corporation incorporated under the laws of the State of Illinois.

18.     The City operates IPRA and is the IPRA Defendants' principal employer.

19.     At all relevant times, Defendant WBEZ was a noncommercial public radio station affiliated with National Public Radio.

20.     At all relevant times, Defendant Steven "Chip" Mitchell ("Mitchell") was an investigative reporter for WBEZ.

## FACTS

21.     Evans has been employed with the City of Chicago as a sworn law enforcement officer since 1986 or for thirty years.

22.     Like many other officers with his level of seniority, Evans has, from time to time, had tense encounters with city residents and others, including Rita King and Rickey Williams.

23.     Evans was promoted to the position of commander in August 2012.

24.     To date, Evans' Complimentary History with the Chicago Police Department includes 177 awards and commendations.

25.     Over the past few years, IPRA has faced public scrutiny in light of heightened media coverage of police misconduct in Chicago and elsewhere.

26.     The controversy over IPRA's practices culminated in Mayor Rahm Emanuel's May 2016 announcement of plans to abolish IPRA and replace it with a civilian agency.

### Campbell's Animosity Toward Evans

27.     In 1999, Campbell was employed by the City in the administrative office of the Second District of the Chicago Police Department.

28.     At the time, Evans held the rank of sergeant.

29.     In or around 1999, Evans initiated a complaint register against Campbell for active insubordination.

30.     As a result of Evans' complaint, Campbell was suspended.

31.     Campbell has harbored animosity toward Evans ever since.

5

## The Rita King Matter

32.     On or about April 10, 2011, Rita King ("King") was arrested by the Chicago Police Department after an alleged domestic dispute with her boyfriend.

33.     King was taken to the Sixth District.

34.     King refused to be fingerprinted or photographed.

35.     At the time, Evans was on duty as Watch Commander for the Sixth District.

36.     At the request of other officers, Evans attempted to assist in processing King.

37.     Evans attempted to escort King to the photograph and fingerprint machines.

38.     Evans also touched King in an attempt to prevent King from spitting on him.

39.     At no time did Evans use excessive force against King, nor did he threaten her.

40.     King later sued Evans in Case No. 13-cv-01937 in the United States District Court in the Northern District of Illinois.

41.     King alleges, among other things, that Evans pressed his hand against her nose for an extended period of time.

42.     Evans denies the allegations.

43.     The King lawsuit is pending.

44.     IPRA investigated the King matter.

6

45.     On or about November 7, 2013, Evans gave a statement to IPRA regarding the King matter.

46.     IPRA recommended that Evans be punished with a 14 day suspension.

47.     The Chicago Police Department declined to discipline Evans.

### Rickey Williams Fails To Identify Evans In A Photo Array

48.     On or around January 30, 2013, Evans and other police officers arrested Rickey Williams ("Williams") for reckless conduct.

49.     A few days later, Williams filed a complaint with IPRA, alleging that during his arrest, Evans shoved a gun down his throat with his left hand and held a taser to his groin with his right hand.

50.     Evans never shoved a gun down Williams' throat.

51.     Evans was not carrying a taser on the day of the Williams arrest.

52.     Campbell was working for IPRA at the time.

53.     On or about February 5, 2013, Jones was assigned to investigate the Williams matter.

54.     Jones had a conflict of interest relating to Evans because he and Evans had prior adversarial contact during other IPRA investigations.

55.     In spite of this, Jones executed a sworn statement that he did not have a conflict of interest.

56.     In or around May 2014, Williams was incarcerated at Pontiac Correctional Center ("Pontiac") for charges unrelated to his arrest by Evans.

7

57.     On or about May 14, 2014, Jones, Cook County Assistant State's Attorney Lauren Freeman ("Freeman"), and Campbell traveled to Pontiac to meet Williams.

58.     Campbell was supposed to have the day off, and was not assigned to work, on May 14, 2014.

59.     Campbell never disclosed to IPRA that she had been previously disciplined by Evans.

60.     Jones and Campbell showed Williams a series of photos to identify the officers involved in his arrest on January 30, 2013.

61.     Williams identified a person in a "filler" photo who was not present during his arrest.

62.     A filler photo is a photograph of someone who was not involved in an incident, but shown to a witness to ensure that he or she identifies the proper person.

63.     Williams also identified other officers who were not present during his arrest.

64.     Williams *failed* to identify Evans in *any* photo.

65.     In fact, the only way Williams *ever* identified Evans was by name and never by face.

66.     Williams admitted that he got Evans' name by searching the Internet with his girlfriend who used to be a friend of Evans.

8

### IPRA Botches The Williams Investigation, Including The Processing Of The DNA On Evans' Gun

67.     On February 4, 2013, Ando circulated a memo to Daun, Lukas, and Stoutenborough, instructing them to confirm whether Evans is left or right handed, because Williams alleged that Evans used his left hand to shove the gun down his throat.

68.     Olvera also noted that it was important to determine whether Evans is left or right handed.

69.     IPRA *never* ascertained whether Evans is left or right handed.

70.     Ando also instructed the IPRA investigators to interview the other police officers present at the scene of Williams' arrest.

71.     At the time of Evans' criminal trial in December 2014, no police officers had been interviewed by IPRA, despite the investigation being open for 22 months.

72.     IPRA investigators also requested that Evans' gun be swabbed for DNA.

73.     A day and a half after Williams' arrest, Evans' gun was swabbed.

74.     CPD Evidence Technician Kelly Comiskey ("Comiskey") was instructed to swab the outside of Evans' gun.

75.     No one at IPRA or otherwise instructed Comiskey to swab different parts of the gun separately, *e.g.*, to swab the barrel of the gun that Williams alleged

was in his mouth separately from the parts of the gun that he did not allege were in his mouth.

76.     Thus, Comiskey used the same swab for the entire gun.

77.     The inside of Evans' gun was never swabbed.

78.     Making matters worse, Evans' gun was never tested for saliva or blood.

79.     The DNA results revealed the presence of Williams' DNA.

80.     Because of the manner in which the gun was swabbed, it was and is impossible to determine where on the gun Williams' DNA was found.

81.     Because of the critical DNA and other tests that were overlooked, it is also impossible to determine from which part of Williams' body the DNA came.

82.     Complicating matters even more, the Illinois State Police Technician performing the DNA tests asked Jones if she could consume the sample.

83.     To "consume" a sample means that it is used in its entirety and that no further tests can be performed.

84.     Jones consented to the sample being consumed, forever destroying the sample.

85.     Jones later admitted that he did not know what it meant to "consume" a sample in the context of a DNA test.

86.     Thus, no follow-up DNA testing can ever be performed.

## The Leak To The Media

87.    Certain documents in IPRA's file, including, but not limited to, DNA test results and Ando's recommendation that Evans be removed from active duty, are confidential, *especially while an investigation is pending*.

88.    Campbell violated her duty of confidentiality and gave the DNA test results and other confidential materials from the Williams IPRA file to WBEZ reporter Chip Mitchell.

89.    In doing so, Campbell violated IPRA's rules and regulations.

90.    Campbell intentionally turned over these documents in order to harm Evans.

91.    On or about July 30, 2014, after receiving these confidential documents, Mitchell contacted Evans for an interview.

92.    That same day, Mitchell told Evans that Campbell gave him these confidential documents and spoke with him about the investigation of Evans.

93.    After Ando learned about the leak, he reported the breach to the Office Of the Inspector General ("OIG") and also to the Federal Bureau of Investigation ("FBI").

94.    In his complaint to OIG, Ando stated that the person who leaked this information "has obstructed an official investigation and can be charged with a felony."

95.    OIG opened an investigation into the leak.

96.    To date, Evans does not know the status of the investigation.

### Chip Mitchell's Series Of Misleading Exposés Against Evans

97. On July 31, 2014, WBEZ broke a story entitled, "CPD leaves commander in post despite assault allegation, DNA match."

98. Mitchell then began a crusade against Evans by publishing a series of stories in print and on-air about allegations of misconduct.

99. These articles damaged Evans' reputation.

100. Other media outlets then picked up these stories.

101. One article dated August 5, 2014, stated that Evans had more excessive force complaints than any other police officer between 1988 and 2008.

102. This statement is false.

103. These articles led to Evans being criminally charged in the Williams matter.

### The Cook County State's Attorney Is Forced To Indict Evans

104. Mitchell's biography on the WBEZ website boasts about his "2014 series of exposés that led to a felony indictment of Chicago's most celebrated police commander."

105. Because of Mitchell's self-proclaimed "exposé," the allegations against Evans were spotlighted in the media throughout the summer of 2014.

106. On July 17, 2014, Eric Garner was strangled to death by a New York City Police Officer.

107. On August 9, 2014 Michael Brown was fatally shot by a police officer in Ferguson, Missouri.

12

108.    On August 28, 2014, Evans' FOID card was revoked due to the pending investigation of the Williams matter.

109.    On October 20, 2014, Laquan McDonald was fatally shot by a Chicago Police Officer.

110.    Chicago Mayor Rahm Emanuel ("Emanuel") was up for re-election in April 2015.

111.    Anita Alvarez ("Alvarez") was facing the upcoming 2016 Democratic Primary Election for retention as Cook County State's Attorney.

112.    On or about September 17, 2014, due to the political pressures facing Emanuel and Alvarez in light of police misconduct in the media, Evans was criminally indicted.

113.    Evans was charged with two counts of aggravated battery with a deadly weapon and seven counts of official misconduct, all felonies.

114.    Evans was placed on no-pay status in mid-October 2014.

**Evans Complains To The Office Of The Inspector General**

115.    On or about May 19, 2015, Evans filed a complaint with OIG about IPRA.

116.    Among other things, Evans complained about IPRA leaking confidential information to the media and investigators Jones and Campbell being allowed to participate in investigations against him despite conflicts of interest.

117.    Upon information and belief, this investigation is still pending.

118. In or around June 2015, Campbell was fired from IPRA on allegations of perjury, unrelated to Evans.

## The Sweeping Acquittal By The Circuit Court Of Cook County

119. The Honorable Judge Diane G. Cannon ("Cannon") presided over Evans' criminal proceeding.

120. A bench trial took place on December 8, 9, and 10, 2015.

121. On December 14, 2015, the Circuit Court found Evans not guilty of all charges.

122. In so finding, the Circuit Court noted: the inconsistencies in Williams' story of events; his inability to identify Evans in the photo array; the impossibility of Williams' version of the story in light of physical evidence (or lack thereof); that the DNA did not determine that Evans was guilty; and, IPRA's botching their investigation. *See,* Exhibit A.

123. Evans' FOID card was reinstated in or around February 2016.

## Evans Is Pressured To Retire

124. On or around April 25, 2016, Evans returned to work with the Chicago Police Department ("CPD") after using his compensatory time.

125. Evans was assigned, against his wishes, to the Medical Section.

126. CPD denied Evans back pay for his time away from duty while his criminal case was pending.

127. Soon after he returned to work, Evans received up to 30 phone calls from his superiors pressuring him to retire.

14

128.   Evans was told that Fairley was pushing to federally charge him if he did not voluntarily retire.

129.   Senior Police Command Staff personally delivered retirement documents to Evans.

130.   Senior Police Command Staff threatened that Evans would be fired if he did not voluntarily retire.

131.   Clearly, IPRA and others wanted to force Evans to leave CPD and then publicly take credit for his retirement.

132.   Evans refused to retire.

### The Rita King Investigation Is Inexplicably Re-Opened

133.   On or about July 5, 2016, Evans was given a notification that Franko and Hayes alleged that he testified falsely at his November 7, 2013 interview in the Rita King matter.

134.   Evans was not informed, and still does not know, the basis for this accusation.

135.   This accusation was made in spite of the City being given a report by a widely respected physician on or about October 12, 2015 regarding the injuries claimed by Rita King.

136.   According to the physician, to wit:

> With a reasonable degree of medical certainty there is *no* evidence of any injury to Ms. King on April 10, 2011 that could have caused a 'blowout' fracture of her orbit or the multiple fractures of the nasal bones as noted on CT. These CT findings do not appear to be acute or a recent

15

> injury given the lack of significant soft tissue edema of the nose or contusion and swelling of the left orbit. In addition there are no peripheral soft tissue changes around the blowout fracture site on CT. Any physical contact that Ms. King did have did not aggravate any pre-existing injury that was noted on the CT.

(*Emphasis added*.)

137.    Evans was informed that IPRA was seeking to enhance his recommended punishment in the King matter from 14 days to termination.

138.    Evans was ordered to appear for a second interview regarding the Rita King matter.

139.    This interview has yet to occur.

140.    IPRA is persisting in its investigation of the King matter in order to retaliate against Evans for prevailing in the Williams matter, for filing a complaint with OIG, for declining to voluntarily retire from CPD, and to create the *appearance* of being tough on "dirty" policemen.

## COUNT I
## <u>RETALIATORY INDUCEMENT TO PROSECUTE</u>
### (Matrice Campbell)

141.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

142.    Evans' 1999 discipline of Campbell was an exercise of his free speech and one of the duties of his employment.

143.    Campbell harbored long-standing animus against Evans for disciplining her.

16

144. Campbell, through leaking information to Chip Mitchell, knowingly and intentionally began the process of the Cook County State's Attorney criminally charging Evans.

145. There was no probable cause to prosecute Evans for misconduct against Rickey Williams, because the IPRA investigation was botched and incomplete.

146. Evans would not have been charged with aggravated battery and official misconduct but/for Campbell's animus, because she leaked information to the media that directly induced the Cook County State's Attorney to criminally charge him.

147. Evans was found not guilty at trial on December 14, 2015.

148. As a result of Campbell's retaliatory inducement to prosecute, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensation time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and extreme emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant.

B. Award compensatory damages in favor of Plaintiff and against Defendant.

C. Award punitive damages in favor of Plaintiff and against Defendant.

D. Award attorneys' fees and costs in favor of Plaintiff and against Defendant.

E. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT II
## <u>MALICIOUS PROSECUTION</u>
## (Illinois State Law Claim)
## (Matrice Campbell, Vincent Jones, Scott Ando, Andrea Stoutenborough, James Lukas, Anthony Finnell, Maria Olvera, Sherry Daun, and William Weeden)

149. Each of the foregoing paragraphs is incorporated as if restated fully herein.

150. The aforementioned defendants commenced criminal proceedings against Evans by referring IPRA's investigation to the Cook County State's Attorney to criminally charge him with aggravated battery and official misconduct.

151. The aforementioned defendants did not have probable cause to believe that Evans committed these crimes, because IPRA's investigation was botched and incomplete.

152. The aforementioned defendants acted with malice or reckless indifference against Evans because of past adversarial contact with Evans and/or to further their own careers and save face for IPRA.

153. On December 14, 2015, Evans was found not guilty at trial.

18

154.    As a result of Defendants' misconduct, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensation time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of the Plaintiff and against Defendants.

B.  Award compensatory damages in favor of Plaintiff and against Defendants.

C.  Award punitive damages in favor of Plaintiff and against Defendants.

D.  Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT III
## FALSE LIGHT
**(Illinois State Law Claim)**
**(Matrice Campbell, WBEZ, and Chip Mitchell)**

155.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

156.    As a result of Campbell leaking confidential and incomplete information to the press, Evans was placed in a false light before the public.

157.    Mitchell and WBEZ published this confidential and incomplete information in print and on the radio, filling in the blanks with Mitchell's own version of the facts.

158.    These news stories placed Evans in a false light before the public.

159.    A reasonable person would find the false light in which Evans was placed to be highly offensive.

160.    Campbell acted with malice and knowledge that the information she leaked to the press was privileged and did not tell the whole story, and that the publication of this information would harm Evans' reputation and subject him to criminal charges.

161.    Mitchell and WBEZ acted willfully, wantonly, recklessly, maliciously, with calculations to harm Evans' character and reputation and solely to advance Mitchell's own career, knowing that they did not have the complete file when they published certain information about the investigation.

162.    As a result of Campbell's, Mitchell's, and WBEZ's misconduct, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensatory time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of the Plaintiff and against Defendants.

20

B. Award compensatory damages in favor of Plaintiff and against Defendants.

C. Award punitive damages in favor of Plaintiff and against Defendants.

D. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Illinois State Law Claim)
### (All defendants)

163. Each of the foregoing paragraphs is incorporated as if restated fully herein.

164. Evans had a reasonable expectancy of a valid business relationship with the Chicago Police Department in that he expected to have continued employment, promotions, and pay raises throughout the remainder of his career.

165. Defendants knew about Evans' expectancy to remain with, and rise through the ranks of, the Chicago Police Department.

166. Defendants intentionally interfered with Evans' expectancy and prevented him from obtaining seniority, rank, and pay status with the Chicago Police Department by destroying his reputation, subjecting him to continued delayed and unwarranted investigations, and causing criminal charges to be brought against him.

21

167.     Because of this interference, Evans suffered damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of comp time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of the Plaintiff and against Defendants.

B.  Award compensatory damages in favor of Plaintiff and against Defendants.

C.  Award punitive damages in favor of Plaintiff and against Defendants.

D.  Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT V
## RETALIATORY PROSECUTION
### (Sharon Fairley, Linda Franko, and Shannon Hayes)

168.     Each of the foregoing paragraphs is incorporated as if restated fully herein.

169.     Evans' OIG complaint against IPRA was an exercise of his free speech.

170.     IPRA officials, including Sharon Fairley, harbored animus against Evans for complaining to OIG.

171.    Evans decision to not voluntarily retire was an exercise of his freedom of association.

172.    IPRA officials, including Sharon Fairley, harbored animus against Evans for returning to work at CPD instead of voluntarily retiring.

173.    As a result of this animus, IPRA officials re-opened the Rita King investigation by claiming that Evans gave false statements in his initial interview about King.

174.    The complaint that alleged that Evans gave false statements in his interview was brought by Franko and Hayes.

175.    At all relevant times, Fairley supervised Franko and Hayes.

176.    At all relevant times, Fairley was ultimately responsible for IPRA's official actions.

177.    IPRA officials changed Evan's recommended punishment for the Rita King incident from 14 days to termination.

178.    There was no probable cause to re-open the King file and change Evans' recommended punishment because there was no information to suggest that Evans lied in his interview.

179.    The Rita King investigation would not have been re-opened and his recommended punishment would not have changed but/for Fairley, Franko, and Hayes' animus about the OIG complaint and his refusal to retire.

180.    As a result of Defendants' retaliatory inducement to prosecute, Evans suffered damages in the form of loss of reputation and extreme anxiety.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of Plaintiff and against Defendants.

B.  Award compensatory damages in favor of Plaintiff and against Defendants.

C.  Award punitive damages in favor of Plaintiff and against Defendants.

D.  Award attorneys' fees and costs in favor of Plaintiff and against Defendants.

E.  Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT VI
## CIVIL CONSPIRACY
### (Illinois State Law Claim)
### (Campbell and Jones)

181.   Defendants conspired by concerted action to accomplish the unlawful purpose of falsely criminally charging Evans and perpetrating administrative complaints against him, with the goal of ousting him from the Chicago Police Department and saving face for IPRA.

182.   Defendants worked to achieve these goals by unlawful means, including, but not limited to: illegally leaking confidential information to the public; recklessly and willfully mishandling investigations involving Evans; publishing and causing to be published false and defamatory statements; and referring the

24

investigation of the Williams matter to the Cook County State's Attorney's Office without probable cause.

183.    In furtherance of the conspiracy, Defendants committed the aforementioned overt acts and were otherwise willful participants in joint activity.

184.    The acts of misconduct set forth in this complaint were undertaken with malice, willfulness, recklessness, and indifference toward Evans' rights, the truth, and notions of justice.

185.    As a direct and proximate cause of this conspiracy, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of comp time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of Plaintiff and against Defendants.

B.  Award compensatory damages in favor of Plaintiff and against Defendants.

C.  Award punitive damages in favor of Plaintiff and against Defendants.

D.  Award such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT VII
## RESPONDEAT SUPERIOR
### (Defendant City of Chicago)

186.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

187.    In committing the acts alleged in the preceding paragraphs, the "IPRA Defendants" were employed by and acting as agents of the City of Chicago.

188.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, should the "IPRA" Defendants be found liable for any or all of the Illinois State Law Claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT VIII
## INDEMNIFICATION
### (Defendant City of Chicago)

189.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

190.    Defendant City of Chicago is the indemnifying entity for the actions of the "IPRA Defendants," described above, who took these actions while in the course and scope of their employment with the City of Chicago.

26

**WHEREFORE,** should the "IPRA Defendants" be found liable of the claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains, pursuant to 745 ILCS 10/9-102.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT IX
## RESPONDEAT SUPERIOR
### (Defendant WBEZ)

191.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

192.    In committing the acts alleged in the preceding paragraphs, Defendant Chip Mitchell was employed by and acting as an agent of WBEZ.

193.    Defendant WBEZ is liable as principal for all torts committed by its agents.

WHEREFORE, should Defendant Chip Mitchell be found liable for any or all of the Illinois State Law Claims set forth above, Plaintiff demands that Defendant WBEZ be found liable for any judgment (other than punitive damages) he obtains.

27

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all triable issues.

**DATED:**     July 28, 2016

Respectfully Submitted,


/s/ Victor P. Henderson_____
Attorney For Plaintiff

Victor P. Henderson
**HENDERSON PARKS, LLC**
330 South Wells Street, Suite 300
Chicago, IL 60606
Telephone: (312) 262-2900
Facsimile:  (312) 262-2901

28