GLENN EVANS,

      Plaintiff,

    v.

CITY OF CHICAGO, et al.,

      Defendants.

No. 16 CV 7665

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Glenn Evans sues the City of Chicago and several employees of the city's Independent Police Review Authority, alleging First Amendment retaliation and various state-law claims. Defendants move to dismiss all claims against them. For the following reasons, the motions to dismiss are granted.

## I.  Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 677–79. A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits any argument on that issue. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Evans attached to his complaint the ruling from his criminal trial, [1-1], and he and one of the defendants have also attached various documents to their briefs on the defendants' motions to dismiss. *See* [47]; [58].[1] "[D]ocuments that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" may be considered on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); Fed. R. Civ. P. 10(c). The only documents meeting these criteria are: (1) the ruling from Evans's trial, [1-1], which is attached to the complaint; (2) Evans's complaint to the inspector general, [58-3], and the articles published by WBEZ, [58-6], which are central to his complaint and referred to in it; and (3) the appointment of Fairley to IPRA, [47-2], which is a public record subject to judicial notice. The other documents and any unsupported facts in Evans's response brief that were not alleged in his complaint are not considered.

## II.    Background[2]

Plaintiff Glenn Evans is a Chicago police officer. In 2011, he assisted in processing Rita King, an arrestee. King later sued Evans, alleging that he pressed his hand against her nose for an extended period of time. (King's lawsuit, *King v. Evans et al.*, Case No. 13-cv-01937 (N.D. Ill.), remains pending.) The City of Chicago's Independent Police Review Authority investigated King's allegations, and Evans gave IPRA a statement in November 2013. IPRA recommended a fourteen-

---

[1] Bracketed numbers refer to entries on the district court docket.

[2] The allegations from Evans's complaint, [1], are taken as true for resolving the motions to dismiss.

day suspension for Evans, but the Chicago Police Department declined to discipline him.

In 2013, Evans was the subject of another IPRA investigation. Rickey Williams filed a complaint with IPRA, alleging that Evans had shoved a gun down Williams's throat and held a taser to his groin. IPRA investigators had Evans's gun tested for DNA, and the results revealed Williams's DNA on the gun. At the time, Martrice Campbell and Vincent Jones were two of the IPRA investigators working on the Williams matter.[3] In May 2014, Jones, Campbell, and a Cook County Assistant State's Attorney met with Williams, showing him a series of photos to identify the officers involved in his arrest. Williams misidentified several officers and identified a "filler" photo, but he did not identify Evans by photo. He did identify Evans by name, saying that he found it by searching the Internet with his girlfriend, who used to be a friend of Evans.

Campbell gave the DNA test results and other confidential materials from the Williams IPRA file to WBEZ reporter Steven "Chip" Mitchell. On July 30, 2014, Mitchell contacted Evans for an interview and told him that he received information from Campbell. The next day, WBEZ and Mitchell began publishing stories about Evans and allegations of misconduct, which were picked up by other media outlets. During the summer of 2014, other allegations of police misconduct had been

---

[3] The complaint spells her name as "Matrice." Campbell's motion to dismiss and Evans's opposition brief spell her name as "Martrice."

highlighted in the media.[4] In September 2014, Evans was indicted for aggravated battery with a deadly weapon and official misconduct. Evans alleges that these charges arising out of the Williams incident were "due to the political pressures facing" the mayor of Chicago and the Cook County State's Attorney "in light of police misconduct in the media." [1] ¶ 112. He was placed on no-pay status in October 2014.

In May 2015, Evans filed a complaint with the city's Office of the Inspector General about IPRA. Evans "complained about IPRA leaking confidential information to the media and investigators Jones and Campbell being allowed to participate in investigations against him despite conflicts of interest." [1] ¶ 116; [58-3]. (In 1999, when Campbell worked in the administrative office for the Chicago Police Department, she was suspended after Evans initiated a complaint register against her for active insubordination. [1] ¶¶ 27–30. Evans alleges that he and Jones had "prior adversarial contact during other IPRA investigations" but does not elaborate. [1] ¶ 54.)

At a bench trial in December 2015, Evans was acquitted of all criminal charges. [1-1]. He returned to work in April 2016 but was assigned to the Medical Section against his wishes and was denied back pay for the pendency of his criminal case. After his return to work, Evans received up to thirty phone calls from

---

[4] Evans's complaint refers not only to the WBEZ articles about Evans in July and August 2014, but also to national reports of deaths and shootings attributed to police misconduct, including the July 2014 death of Eric Garner in New York City, the August 2014 death of Michael Brown in Ferguson, Missouri, and the October 2014 death of Laquan McDonald in Chicago (although October 2014 is after Evans was indicted). [1] ¶¶ 106–09.

superiors, who pressured him to retire. Senior Police Command Staff also personally delivered retirement documents to Evans, but he refused to retire.

In July 2016, Evans received notice that IPRA investigators Linda Franko and Shannon Hayes alleged that he testified falsely at his 2013 IPRA interview regarding the King investigation. (Sharon Fairley had been appointed as Chief Administrator of IPRA in early 2016.[5] [47-2].) The investigation was reopened and Evans was ordered to appear for a second interview (which had yet to occur at the time he filed this complaint). Evans heard that IPRA was seeking to change its recommendation from the King investigation from suspension to termination.

Shortly after receiving notice that the King investigation was being reopened, Evans filed this suit. [1]. He brings claims for retaliatory inducement to prosecute under 42 U.S.C. § 1983 against Campbell (Count I) and Fairley, Franko, and Hayes (Count V). He also brings Illinois state-law claims for malicious prosecution against Campbell, Jones, and other IPRA employees (Count II), false light against Campbell (Count III), tortious interference against all defendants (Count IV), civil conspiracy against Campbell and Jones (Count VI), and respondeat superior and indemnification claims against the City of Chicago (Counts VII and VIII).[6] Defendants now move to dismiss all claims against them.

---

[5] Fairley argues that she worked at OIG in 2015, before her appointment to IPRA in 2016. Although that fact is outside the complaint, Evans adopts it in his opposition brief. [58] at 22–23.

[6] Evans also sued WBEZ and Mitchell but dismissed the claims against them without prejudice. [40].

### III. Analysis

#### A. Retaliatory Inducement to Prosecute

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). An individual subject to criminal prosecution in retaliation for exercising his right to free speech may bring a § 1983 claim against an official who induced the prosecutor to bring charges that would not have been initiated without the nonprosecuting official's urging. *Id.* at 262; *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 626 (7th Cir. 2008). To establish a prima facie case for a typical First Amendment retaliation claim, a plaintiff must demonstrate that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter the free exercise of his First Amendment rights; and (3) his speech was a motivating factor in the defendant's retaliation. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

"[T]he need to demonstrate causation in the retaliatory-prosecution context presents an additional difficulty" beyond the requisite causation in ordinary retaliation claims. *Hartman*, 547 U.S. at 259. An action for retaliatory inducement to prosecute is unique in that "the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Id.* at 262. "To succeed on such a claim, the plaintiff must show a causal connection between the official's retaliatory animus and a subsequent injury in a retaliation action." *Peals*, 535 F.3d at 626 (citing *Hartman*, 547 U.S. at 259). Therefore, a

plaintiff must not only show that the nonprosecuting official acted in retaliation, but he must also show that the nonprosecuting official "induced the prosecutor to bring charges that would not have been initiated without his urging." *Hartman*, 547 U.S. at 262; *Peals*, 535 F.3d at 626. To buttress this causal connection, "[t]he plaintiff also must plead and prove, as an element of his case, that there existed no probable cause to support the underlying charge." *Peals*, 535 F.3d at 626 (citing *Hartman*, 547 U.S. at 265–66).

      1.   *Retaliatory Inducement to Prosecute Claim against Campbell (Count I)*

Evans alleges that his discipline of Campbell in 1999 was an exercise of his right to free speech and one of the duties of his employment, that Campbell harbored a longstanding grudge against him for it, that she leaked information to a reporter to induce the Cook County State's Attorney to seek an indictment against Evans for the Williams incident, and that there was no probable cause to prosecute Evans because the IPRA investigation was botched and incomplete. Campbell argues that Evans's allegations of retaliatory animus are implausible, that he fails to allege a causal connection between Campbell's actions and his prosecution, and that his allegations show that there was probable cause for the charges brought against him.[7]

---

[7] Campbell does not argue that the 1999 discipline was not protected speech, but in the event Evans files an amended complaint, I note that "[p]ublic–employee speech is subject to a special set of rules for First Amendment purposes. Whether a public employee's speech is constitutionally protected depends on 'whether the employee spoke as a citizen on a matter of public concern.' If the speaker is not wearing her hat 'as a citizen,' or if she is not speaking 'on a matter of public concern,' then the First Amendment does not protect her."

Evans's allegations as to Campbell's retaliatory animus are short but not implausible. Campbell asserts that Evans needed to plead more details describing her insubordination, her interactions with Evans, or that she knew that it was Evans who initiated the complaint resulting in her discipline, citing *Bianchi v. McQueen*, No. 12-CV-00364, 2014 WL 700628, at *13 (N.D. Ill. Feb. 24, 2014), as an example where a retaliatory-prosecution claim was dismissed because the plaintiffs failed to allege that the defendants' retaliatory animus caused their injury.

In *Bianchi*, however, the complaint was devoid of any allegation that any of the defendants knew of the plaintiffs prior to the events in question or worked in concert with unnamed "political enemies." "[A] plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (marks omitted). Here, Evans pled that when he and Campbell both worked at the Chicago Police Department, she was suspended after he complained about her conduct and that fifteen years later, she leaked confidential and damaging information from an IPRA investigation about Evans to a reporter. Drawing all reasonable inferences in Evans's favor, these allegations are sufficient to raise an inference that Campbell held a grudge against Evans for causing her suspension in 1999 and leaked confidential information to get

*Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016) (internal citations omitted) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). An employee does not speak as a citizen when he makes statements pursuant to his official duties. *Id.*

back at him years later, even though the complaint does not specifically allege that Campbell knew Evans initiated her suspension.

But "[e]ven if retaliatory animus can be shown, the retaliation must be the cause-in-fact of the claimed injury." *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016). Campbell argues that Evans's allegation that Campbell's leak of information to the media "directly induced the Cook County State's Attorney to criminally charge him," [1] ¶ 146, is not credible. She reasons that this allegation is belied by his other allegations that he was indicted in September 2014 "due to the political pressures facing" the mayor of Chicago and Cook County State's Attorney "in light of police misconduct in the media" and due to the mayor's and state's attorney's upcoming reelections. [1] ¶¶ 110–12. She also points out that he does not allege that Campbell herself recommended to the state's attorney's office that Evans be charged for the Williams incident. Evans responds that if not for Campbell's leak to the media, the state's attorney would not have been pressured to charge him.[8] Evans argues that he was indicted because the state's attorney wanted to look tough on police officers.

Evans alleges that the state's attorney's office had been investigating him for the Williams incident since at least May 2014. [1] ¶ 57. He does not allege that Campbell provided false information to the state's attorney's investigation, that she

---

[8] Evans also argues that it is widely known that IPRA avoids recommending to the state's attorney's office that officers be charged and that the state's attorney avoids charging officers. [58] at 8. Facts supporting such arguments are not alleged in his complaint, however, and are not considered.

requested or urged the state's attorney's office to prosecute him, or that she leaked information not otherwise available to the state's attorney's office. At most, Evans alleges that Campbell's media leak encouraged his prosecution in combination with other factors, including a rising tide of national media reporting on police misconduct and increased political pressure on a mayor and a state's attorney nearing reelection. *See* [1] ¶¶ 110–12. It is not enough that some act of Campbell's contributed to events giving rise to Evans's prosecution. In a retaliatory-prosecution claim, the retaliation must be "the but-for basis for instigating the prosecution." *Hartman*, 547 U.S. at 261; *Rehberg v. Paulk*, 611 F.3d 828, 849 (11th Cir. 2010) ("To sue for retaliatory prosecution, a plaintiff must establish a 'but-for' causal connection between the retaliatory animus of the non-prosecutor and the prosecutor's decision to prosecute.") (citing *Hartman*, 547 U.S. at 256, 261); *Peals*, 535 F.3d at 626 ("[I]nstigation of the retaliatory prosecution is subject to recovery as the but-for cause of official action offending the Constitution.") (marks omitted).

Evans's allegations do not rise to the level of but-for causation sufficient to rebut the presumption of prosecutorial discretion, particularly when the face of his complaint alleges facts amounting to probable cause. The absence of probable cause "is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Hartman*, 547 U.S. at 263. Although probable cause can be a factual question, a plaintiff may plead himself out of court by alleging facts supporting a finding of probable cause. *See, e.g., Williamson*, 714 F.3d at 448 (plaintiff "pleaded

herself out of court" on false arrest claim by alleging facts sufficient to find probable cause).

"Probable cause requires only that a probability or a substantial chance of criminal activity exist," *Purvis v. Oest*, 614 F.3d 713, 722–23 (7th Cir. 2010), and it exists if the facts and circumstances "would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999)). Evans was charged with two counts of aggravated battery with a deadly weapon and seven counts of official misconduct, all felonies. To establish aggravated battery with a deadly weapon, the state had to prove that Evans knowingly, without legal justification, by any means caused bodily harm to Williams or made "physical contact of an insulting or provoking nature" with Williams while using "a deadly weapon other than by discharge of a firearm." 720 ILCS 5/12-3(a), 5/12-3.05(f). To establish official misconduct, the state had to prove that, while acting in his official capacity, Evans knowingly performed an act that he knew he was forbidden by law. 720 ILCS 5/33-3; *People v. Williams*, 239 Ill.2d 119, 127 (2010).

Evans's allegations, taken as true, show that a reasonable mind, acting on the facts within the knowledge of the prosecutor, could believe that Evans had made insulting physical contact with Williams while using his gun and that, while acting as a police officer, Evans knowingly performed an act that he knew was forbidden by law. Evans alleges that he, with other officers, arrested Williams for reckless

conduct in January 2013. Within a few days of the arrest, Williams filed a complaint that Evans shoved a gun down his throat and held a taser to his groin. Evans's gun was swabbed within a few days of the arrest, and Williams's DNA was found on it. These allegations are sufficient to establish probable cause against Evans for aggravated battery with a deadly weapon and official misconduct. Williams's credibility problems—which appear to have been an issue at Evans's criminal trial, [1-1]—and Evans's allegation that Williams's version of events was false do not preclude a finding of probable cause if there was other evidence supporting probable cause. *See, e.g., Saville*, 575 F.3d at 659–62 (probable cause can be found despite a victim's credibility issues or a defendant's denial of wrongdoing).

Evans's argument that IPRA botched the DNA test—by allowing the sample to be consumed, by not testing for blood or saliva, and by not taking different swabs for different parts of the gun—does not attack or dispute the fact that some form of Williams's DNA was found on Evans's gun. (At a minimum, the complaint alleges that there was a positive DNA report at the time of the charging decision.) Even if Evans was eventually acquitted, that "does not negate the existence of probable cause at the relevant time." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010); *see also Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("[P]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."). Williams's complaint, Evans's undisputed participation in his arrest, and the report that Williams's DNA was on Evans's gun were sufficient to warrant a reasonable

belief that Evans made provoking physical contact with Williams while using his gun.[9]

Evans has not alleged the causal connection required for a retaliatory-prosecution claim and has pled himself out of court on probable cause, so therefore the retaliatory-prosecution claim against Campbell is dismissed.

### 2. *Retaliatory Inducement to Prosecute Claim against Fairley, Franko, and Hayes (Count V)*

Evans's retaliatory inducement to prosecute claim against Fairley, Franko, and Hayes for reopening the King investigation in retaliation for his OIG complaint against IPRA also fails for several reasons.[10] Most notably, this claim fails because Evans does not allege that he was criminally prosecuted (or even charged) for the King incident. Evans's argument that he need not allege an actual criminal prosecution because he brings this claim in a civil context as a city employee is contrary to authority, which makes clear that in these claims, "the claimed retaliation for protected conduct is *a criminal charge.*" *Hartman*, 547 U.S. at 260 (emphasis added).

---

[9] A grand jury indictment is also prima facie evidence of probable cause, *Swearnigen-El*, 602 F.3d at 863, although this presumption may be rebutted by showing that an indictment was improperly procured. *See Cervantes*, 188 F.3d at 811 n.7, *overruled on other grounds by Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). The grand jury indictment is not considered in this probable cause analysis because Evans contends that Williams's false version of events was used to obtain his indictment. *See id.* (plaintiff's allegation that his indictment was the result of the defendant's perjury "precludes us from considering the indictment in our probable cause analysis").

[10] Evans does not respond to any of the defendants' arguments that his refusal to retire was not constitutionally protected freedom of association, as it was intimately connected with his professional duties and was not a matter of public concern. His failure to respond forfeits any argument on that issue. *Alioto*, 651 F.3d at 721.

To the extent Evans is arguing that he has alleged a First Amendment retaliation claim against these defendants, even without a criminal prosecution, a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). And Evans's allegations fail to even state an ordinary First Amendment retaliation claim based on the reopened King investigation. Regardless of whether Evans's OIG complaint was constitutionally protected (an issue I do not reach), to support a First Amendment retaliation claim, a plaintiff must allege that he suffered a deprivation likely to deter the free exercise of his First Amendment rights. *Massey*, 457 F.3d at 716. At most, Evans alleges that Fairley, Franko, and Hayes reopened the King investigation in July 2016 and requested Evans appear for a second interview (which was not yet scheduled). But Evans cites no case law suggesting that a retaliatory investigation, alone, is a sufficient deprivation to support a First Amendment retaliation claim. *See Hartman*, 547 U.S. at 262 n.9 ("No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort."); *Rehberg*, 611 F.3d at 850–51 ("[The] right to be free from a retaliatory investigation is not clearly established.").

While the Supreme Court alluded in *Hartman* to the idea that the adverse consequences of a retaliatory investigation might theoretically justify recognizing a retaliatory investigation as a deprivation, 547 U.S. at 262 n.9 ("Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not

before us."), Evans's arguments that the reopened King investigation was harassing and jeopardized his employment are conclusory, undeveloped, and not reflected in his complaint. He does not argue or allege that the investigation was conducted in a harassing manner, only that reopening the investigation constituted harassment. And his complaint merely alleges that IPRA might seek to recommend termination upon conclusion of the reopened King investigation, not that it has actually recommended termination or any discipline (other than the 2013 recommendation that he be suspended, which was not acted on by the Chicago Police Department). He has not shown any authority suggesting that a mere investigation or the mere possibility of disciplinary recommendation are deprivations sufficient to support a First Amendment retaliation claim.

Because retaliatory investigation is not a clearly recognized tort, Fairley, Franko, and Hayes are entitled to qualified immunity on this claim. Qualified immunity precludes damages liability against government officials performing discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Bianchi*, 818 F.3d at 319 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). To determine whether an official is entitled to qualified immunity, courts look to whether the plaintiff has alleged a deprivation of a constitutional right and whether the right at issue was clearly established. *Id*. Evans has not shown any case law suggesting that retaliatory investigation rises to the level of a constitutional violation or that this right was clearly established when defendants reopened the

King investigation. *See, e.g., Hartman*, 547 U.S. at 262 n.9; *Rehberg*, 611 F.3d at 850–51 (even assuming that the plaintiff stated a constitutional violation for retaliatory investigation, the investigators "still receive qualified immunity because [plaintiff's] right to be free from a retaliatory investigation is not clearly established").

Evans has failed to state a claim for retaliatory inducement to prosecute against Fairley, Franko, and Hayes and therefore this claim is dismissed.

### B.      State-Law Claims

Because Evans's federal claims are dismissed for failure to state a claim, I decline to exercise supplemental jurisdiction over Evans's state-law claims. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478, 480 (7th Cir. 2012). This case is in its initial stages, and there is no reason not to follow the presumption that federal courts will relinquish jurisdiction over supplemental state-law claims. The dismissal of the complaint is without prejudice because ordinarily "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

## IV.      Conclusion

Defendants' motions to dismiss, [43], [44], [47], are granted. The dismissal of the complaint is without prejudice. Plaintiff has leave to file an amended complaint by June 1, 2017.  If plaintiff does not file an amended complaint, this dismissal will

convert to a dismissal with prejudice as to the federal claims and without prejudice as to the state-law claims, and final judgment will be entered.

ENTER:

Manish S. Shah
United States District Judge

Date: 5/11/2017